UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NAGEL CONSTRUCTION, INC.,

    Plaintiffs,

v.

Case No. 1:05-cv-492
Hon. Hugh W. Brenneman, Jr.

CREST CONSTRUCTION & EXCAVATING
LLC, et al.,

    Defendants.
_____/

## OPINION

    Plaintiff's suit involves a Miller Act claim arising from work performed on a federal construction project in Battle Creek, Michigan. This matter is now before the court on plaintiff's motion for summary judgment (docket no. 33). For the reasons stated below, plaintiff's motion will be granted.

    **I.**    **Background**

    The facts in this case are largely undisputed. Defendant J.O.A. Construction Co., Inc. ("J.O.A."), the general contractor, entered into a contract to perform a construction project at the Battle Creek Air National Guard Base in Battle Creek, MI. Defendant Travelers Casualty and Surety Company of America ("Travelers") provided a performance and payment bond to J.O.A. as required by the Miller Act, 40 U.S.C. § 3131 *et seq.* Defendant Crest Construction and Excavating, LLC ("Crest"), a subcontractor, entered into a contract with the general contractor to perform certain work on the project.

    Plaintiff (sometimes referred to as the "sub-subcontractor") entered into a contract with Crest to provide excavation services and materials on the project on or about April 30, 2004.

Dick Hoekstra Aff. at ¶ 3. The contract required plaintiff to excavate jacking and boring pits, jack and bore steel casing under railroad tracks at four locations, install carrier pipes and conduits inside the steel casing, and grout (place pea-stone in the casings around the carrier pipes). *Id.* at ¶ 4. Plaintiff performed preliminary work on the site between June 21, 2004 and June 30, 2004. *Id.* Plaintiff returned to the site on July 23, 2004 to complete the jack and bores and grout. *Id.* at ¶ 6. Upon completion of the work, plaintiff submitted invoices to Crest in the amount of $64,720.00. *Id.* at ¶ 8; Invoice (docket no. 34-4). Despite plaintiff's demands, Crest made no payments on the invoices. Hoekstra Aff. at ¶ 9.

Plaintiff provided a notice of claim on the payment bond to J.O.A. on October 20, 2004, seeking payment in the amount of $64,720.00. Notice of Claim, attached to plaintiff's brief as Exh. D. On November 11, 2004, plaintiff executed a claim on the payment bond seeking $64,720.00. Claim Form, attached to plaintiff's brief as Exh. F. Travelers denied the claim on the basis that plaintiff last worked on the project on June 30, 2004, and that its notice of claim was untimely under the Miller Act. Traveler's Letter (12/21/04), attached to plaintiff's brief as Exh. G. Plaintiff contested the denial, advising Travelers that it last worked on the project on July 23, 2004 and that its notice of claim fell within the 90-day time frame as required by the Miller Act. Hoekstra Letter (1/17/05), attached to plaintiff's brief as Exh. G.

On July 20, 2005, plaintiff filed a five-count complaint against defendants. In Counts I and II, plaintiff sought damages against Crest for breach of contract and unjust enrichment/quantum meruit. In Count III, plaintiff sought damages against J.O.A. as a third party beneficiary of the government contracts. In Count IV, plaintiff sought damages against Travelers on the surety bond. Finally, in Count V, plaintiff sought penalty interest against Travelers pursuant to the Michigan

Insurance Code. Three of the counts have been resolved: plaintiff obtained a default judgment against Crest in Counts I and II and has voluntarily dismissed Count V.

Plaintiff's motion for summary judgment is directed against both J.O.A. and Travelers. However, the motion addresses only its bond claim against Travelers as alleged in Count IV. Accordingly, the court's opinion is limited to that claim.[1]

## II. Standard of Review

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476 (6th Cir. 1995), the court set forth the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of production, the nonmoving party cannot rest on its pleadings, but must present significant probative evidence in support of the complaint to defeat the motion for summary judgment. The mere existence of a scintilla of evidence to support plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.

*Copeland*, 57 F.3d at 478-79 (citations omitted). "In deciding a motion for summary judgment, the court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000).

---

[1] Although plaintiff's motion for summary judgment states that it seeks relief against both J.O.A. and Travelers, the motion and supporting brief are directed exclusively at the Miller Act claim against Travelers as alleged in Count IV. Plaintiff's motion does not address its claim against J.O.A. as alleged in Count III, i.e., that it is a third party beneficiary of J.O.A.'s government contract. This third party beneficiary claim against J.O.A. is distinct from the Miller Act claim. *See Faerber Electric Company, Inc., v. Atlanta Tri-Com, Inc.*, 795 F. Supp. 240, 244 (N.D. Ill. 1992) (observing that the Miller Act is not a sub-subcontractor's only remedy, and that "it may also pursue any common law or equitable remedy against the prime contractor that may exist independent of the existence of a bond").

### III.    Plaintiff's claim under the Miller Act

As a general rule, suppliers of labor or materials on private construction projects can secure a mechanic's lien against the improved property under state law. However, suppliers on government projects are deprived of their usual security interest because such a lien cannot attach to government property. *See F. D. Rich Company, Inc. v. Industrial Lumber Company, Inc.*, 417 U.S. 116, 122 (1974). The Miller Act provides a federally mandated payment bond as an alternative remedy to protect the rights of suppliers on federal construction projects. *Id.* As the Supreme Court explained in *United States v. Carter*, 353 U.S. 210 (1957):

> The Miller Act represents a congressional effort to protect persons supplying labor and material for the construction of federal public buildings in lieu of the protection they might receive under state statutes with respect to the construction of nonfederal buildings. The essence of its policy is to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to its suppliers of labor and material.

*Carter*, 353 U.S. at 216-17.

The Miller Act provides in pertinent part as follows:

**(a) Definition.** In this subchapter, the term "contractor" means a person awarded a contract described in subsection (b).

**(b) Type of bonds required.** Before any contract of more than $100,000 is awarded for the construction, alteration, or repair of any public building or public work of the Federal Government, a person must furnish to the Government the following bonds, which become binding when the contract is awarded:

**(1) Performance bond.** A performance bond with a surety satisfactory to the officer awarding the contract, and in an amount the officer considers adequate, for the protection of the Government.

**(2) Payment bond.** A payment bond with a surety satisfactory to the officer for the protection of all persons supplying labor and material in carrying out the work provided for in the contract for the use of each person. The amount of the payment bond shall equal the total amount payable by the terms of the contract unless the

>officer awarding the contract determines, in a writing supported by specific findings, that a payment bond in that amount is impractical, in which case the contracting officer shall set the amount of the payment bond. The amount of the payment bond shall not be less than the amount of the performance bond.

40 U.S.C. § 3131.

>Every person that has furnished labor or material in carrying out work provided for in a contract for which a payment bond is furnished under section 3131 of this title and that has not been paid in full within 90 days after the day on which the person did or performed the last of the labor or furnished or supplied the material for which the claim is made may bring a civil action on the payment bond for the amount unpaid at the time the civil action is brought and may prosecute the action to final execution and judgment for the amount due.

If a person supplying labor and material on the federal construction project has not been paid, that person may file a civil action to collect on the payment bond:

40 U.S.C. § 3133(b)(1).

A sub-subcontractor who does not have a direct contractual relationship with the general contractor, like plaintiff, "may bring a civil action on the payment bond on giving written notice to the contractor within 90 days from the date on which the person did or performed the last of the labor or furnished or supplied the last of the material for which the claim is made." 40 U.S.C. § 3133(2). The sub-subcontractor's civil action "must state with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was done or performed." *Id.*

Under the Miller Act, a sub-subcontractor must meet three conditions before receiving payment from the bond: (1) the sub-subcontractor must give notice within 90 days of its last work; (2) the notice must state with substantial accuracy the amount claimed; and (3) the notice must include "the name of the party to whom the material was furnished or supplied or for whom

the labor was done or performed." *United States ex rel. S & G Excavating v. Seaboard Surety Company*, 236 F.3d 883, 884 (7th Cir. 2001) (quoting former 40 U.S.C. § 270b(a), now § 3133(b)). *See Southern Electrical Health Fund v. Heritage Mutual Insurance Company*, 147 Fed. Appx. 497, 502 (6th Cir. 2005) (adopting requirements set forth in *S & G Excavating*). The undisputed facts establish that plaintiff met these three conditions of the Miller Act.

Travelers, however, contend there is an additional notice requirement. In its first affirmative defense, Travelers states that plaintiff waived its claim under the Miller Act "when it failed to provide notice as required by the payment bond and Michigan law." *See* docket no. 17.[2] In its answer, Travelers alleges that:

> the copy of the bond provided with [p]laintiff's [c]omplaint is not the complete bond where [sic] an amendment attached to the bond is omitted. This amendment requires a subcontractor to provide notice within thirty (30) days of starting work and ninety (90) days of finishing work, in accordance with the laws of the State of Michigan. A copy of the amendment is attached as Exhibit A.

Answer at ¶ 12. In its response, Travelers states that J.O.A. submitted the notice provisions of the Michigan public works bond statute with the payment bond "as an amendment to be included with the payment bond." Response at 3.

The Michigan public works bond statute requires contractors to secure performance and payment bonds on any contract exceeding $50,000.00, which involves, "the construction, alteration, or repair of any public building or public work or improvement of the state or a county, city, village, township, school district, public educational institution, or other public subdivision, public authority, or public agency." M.C.L. § 129.201.

---

[2] J.O.A. and Travelers are represented by the same attorney and have filed a joint answer, joint affirmative defenses and joint response to plaintiff's motion for summary judgment. *See* docket nos. 17, 42. As the court previously discussed, however, plaintiff's motion is only directed at Travelers.

The Michigan bond statute is modeled after the Miller Act. *See Pi-Con, Inc. v. A.J. Anderson Construction Company*, 435 Mich. 375, 381, 458 N.W.2d 639 (1990) (explaining that "[t]he notice requirements of the Miller Act are nearly identical with those of the [Michigan public works bond statute], except the federal statute requires notice to the general contractor of a public works project only once, within ninety days from the date on which the subcontractor completes its work"). The notice provision of the Michigan public works bond statute provides in pertinent part that:

> A claimant not having a direct contractual relationship with the principal contractor shall not have a right of action upon the payment bond unless (a) he has within 30 days after furnishing the first of such material or performing the first of such labor, served on the principal contractor a written notice, which shall inform the principal of the nature of the materials furnished or to be furnished, or labor being performed or to be performed and identifying the party contracting for such labor or materials and the site for the performance of such labor or the delivery of such materials, <u>and</u> (b) he has given written notice to the principal contractor and the governmental unit involved within 90 days from the date on which the claimant performed the last of the labor or furnished or supplied the last of the material for which the claim is made, stating with substantial accuracy the amount claimed and the name of the party to whom the material was furnished or supplied or for whom the labor was performed.

M.C.L. § 129.207.

Plaintiff contends that the copy of the payment bond it received from the United States Property and Fiscal Office did not include the alleged amendment incorporating Michigan's 30-day notice provision. *See* Hoekstra Aff. at ¶ 11; Payment Bond, attached to plaintiff's brief as Exh. E. Although the parties disagree on whether the payment bond included this alleged amendment, this factual dispute does not preclude the entry of summary judgment. Viewing the facts in the light most favorable to the non-movant, that the payment bond was amended, the court concludes that plaintiff was not subject to the additional 30-day notice provision as a matter of law.

Travelers contends that plaintiff is bound by the 30-day notice provision because the contracting federal agency accepted the "amended" payment bond. The court disagrees. The Miller Act is "highly remedial" and should be construed liberally to effectuate Congress' intent to protect those whose labor and materials go into federal construction projects. *J.W. Bateson Co., Inc. v. United States ex rel. Board of Trustees*, 434 U.S. 586, 594 (1978); *Fleisher Engineering & Construction Company v. United States ex rel. Hallenbeck*, 311 U.S. 15, 17 (1940). As the court previously discussed, plaintiff has met the three conditions necessary to receive payment from the bond. No additional conditions are required under the Miller Act. *S & G Excavating*, 236 F.3d at 884. On the contrary, adding requirements to the Miller Act would be "particularly inappropriate," because it is remedial legislation "that should be read charitably to subcontractors." *Id.* at 886.

The bond "amendment" at issue is an attempt to make plaintiff subject to the Michigan version of the Miller Act, which requires sub-subcontractors to give general contractors the additional 30-day notice on contracts for state, county and local government projects. While the Michigan Legislature requires this additional notice on non-federal construction projects, Congress requires no such additional notice on federal construction projects. The Miller Act establishes a mechanism to protect subcontractors performing work on federal public buildings in lieu of the protection they might receive under state statutes that relate to the construction of non-federal buildings. *Carter*, 353 U.S. 210 at 216. "The Miller Act provides a separate federal cause of action . . . the substance of the rights created thereby is a matter of federal not state law." *F. D. Rich Company, Inc. v. Industrial Lumber Company, Inc.*, 417 U.S. 116, 127 (1974). A uniform national application of the Miller Act meets the reasonable expectations of litigants, whose federal contracts may involve construction in more than one state. *Id. See, e.g., Aetna Casualty and Surety Company*

*v. United States ex rel. R. J. Studer & Sons*, 365 F.2d 997, 999 (8th Cir. 1966) (South Dakota statute restricting the operations of foreign corporations to enter into contracts could not "condition the rights granted under the Miller Act" to those corporations).

Furthermore, defendant cites no authority, and this court has found none, which supports the proposition the parties to a particular federal contract can override the requirements of the Miller Act by agreeing to a payment bond that contains more restrictive notice requirements on a non-signatory sub-subcontractor than does the Act. Enforcement of such a non-conforming bond would be contrary to the highly remedial nature of the Miller Act, the uniform national application of the Act, and Congress' intent "to provide a surety who, by force of the Act, must make good the obligations of a defaulting contractor to its suppliers of labor and material." *See J.W. Bateson Co., Inc.*, 434 U.S. at 594; *Carter*, 353 U.S. at 216; *Fleisher Engineering & Construction Company*, 311 U.S. at 17. *Cf. Hub Electric Company, Inc. v. Gust Construction Company, Inc.*, 585 F.2d 183, 187-88 (6th Cir. 1978) (holding that a surety may agree to accept a greater liability than that required by statute, but "for reasons of public policy it may not contract for less"). Here, a contract imposing additional burdens on sub-subcontractors, and affording more protection to the surety than the federal law contemplates would be a contract imposing less liability.

For all these reasons, the court finds that plaintiff was not subject to the 30-day notice requirement as an additional condition on its Miller Act claim.

**IV. Conclusion**

The record reflects that plaintiff has met the three conditions necessary to receive payment on the Miller Act bond and is entitled to summary judgment on that claim. Accordingly,

plaintiff's motion for summary judgment (docket no. 33) will be **GRANTED** against Travelers in the amount of $64,720.00. An order consistent with this opinion shall be issued forthwith.

Dated:  June 29, 2006                   /s/ Hugh W. Brenneman, Jr.
                                                                                Hugh W. Brenneman, Jr.
                                                                                United States Magistrate Judge